**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**FRANCIS M. THOMAS,**

    **Plaintiff,**

vs.                                                                                            Civ.  No. 01-0213 LH/RLP

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

**UNITED STATES MAGISTRATE JUDGE'S**
**ANALYSIS AND RECOMMENDED DISPOSITION[1]**

1.  Francis M. Thomas ("Plaintiff" herein), appeals the decision of the Commissioner of Social Security to deny his application for disability benefits under Title II of the Social Security Act.  He contends that the Administrative Law Judge ("ALJ" herein) erred by denying his claim at step two of the sequential evaluation process.  For the reasons stated here, I recommend that Mr. Thomas' motion be denied.

I.
Factual Background

2.   Plaintiff was employed as a pipefitter and welder for Amoco for ten years prior to his alleged date of onset of disability.  He developed psychological problems after being exposed to several highly dangerous, life threatening situations at work, where safety procedures were ignored.   He contends that he has been disabled as a result of psychological problems since March 3, 1999.

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

3.      He began therapy session with social worker Lori Candrian on March 22, 1999, complaining of stress caused by conflict surrounding workplace safety issues, as well as family issues.[2] (Tr. 95). Ms. Candrian diagnosed Adjustment disorder with depressed and anxious mood (Axis I), assigned a current GAF[3] of 50, prior GAF in the past year of 70, and recommended that he obtain psychiatric evaluation and medications.  (Tr. 94-95).

4.      Plaintiff was evaluated by David Blackburn, PhD, a clinical psychologist, in May 1999. (Tr. 112). He again complained of increasing levels of stress and anxiety caused by workplace safety issues. Dr. Blackburn diagnosed Major depressive disorder, single episode, severe, without psychotic features, Generalized anxiety disorder, Post Traumatic Stress Disorder ("PTSD" herein), Personality disorder NOS and assigned a current GAF of 48.  Dr. Blackburn recommended psychotherapy, medication for mood stabilization, group therapy to develop social skills and interaction and vocational assistance to help him transition to alternative jobs or careers in the event Plaintiff was unable to return to his job at Amoco. (Tr. 114).

5.      From April through August 1999 Plaintiff obtained psychiatric counseling and medication (Neurontin) from Larry M. Nahmias, M.D.  (Tr. 98-106).  Plaintiff also continued to see Dr. Blackburn, who noted a decrease in anxiety levels.  (Tr. 108-111).

---

[2] When seen by Ms. Candrian, Plaintiff complained of withdrawal from work, sleep disturbance, nightmares, lessened ability to concentrate, anxiety and suicidal thoughts without plan.  Objectively, his thoughts were tangential and circumstantial, his mood was anxious and irritable, he was suspicious of co-workers and had ideas of persecution.  He memory remained very good.  (Tr. 95)

[3] A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders, 4th Ed.,at 30.  A GAF of 41-50 is indicative of "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning." Id. at 32.  A GAF of 61-70 is indicative of  "[s]ome mild symptoms (e.g, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.".  Id. at 32.

6.    In September 1999 Plaintiff was awarded twenty-four months of long-term disability from Amoco/Cigna, and moved to rural New Mexico where his wife had obtained a teaching job. (Tr. 139, 190, 160, 108, 201).

7.    Plaintiff initiated psychological counseling with Robert Sherrill, PhD, in November 1999, in order to address both PTSD and a learning disability. (Tr. 139). Dr. Sherrill noted in December 2000 that Plaintiff's move to a rural area had resulted in considerable abatement of the symptoms on which his diagnosis of depression and PTSD had been based. (Tr. 166). Plaintiff also began seeing Alex Braiman, M.D., a psychiatrist. Plaintiff identified work safety issues at Amoco and family issues as the cause of his psychological problems. (Tr. 161). Dr. Braiman continued Plaintiff on Neurontin (Tr. 162) which stabilized his mood without any recorded side effects. (Tr. 159).

8.    Plaintiff enrolled in college in January 2000. (Tr. 159). Prior testing had identified a learning disability, slowed auditory-verbal processing. This was addressed by utilizing "simple classroom adaptations to maximize his potential for learning, such as a tape recorder to record lectures, and a spell checker to accommodate his dyslexia for in-class writing assignments." (Tr. 131).

9.    Plaintiff was evaluated by Steven Sacks, M.D., a psychiatrist, in March 2000, at the request of the Disability Determination Unit. (Tr. 116-120). Based on record review, interview and mental status examination Dr. Sacks diagnosed Major depression, possible single episode (Axis I) and assigned a current and past year GAF of 75[4]. He stated:

> In general, the claimant is able to relate with others. He does have difficulties with supervisors when disagreements over apparent job safety is (sic) involved. He has not had a history of arrests for assaults or any domestic violence incidents. He claims he

---

[4]GAF of 71-80 indicates that "If symptoms are present, they are transient and expectable reactions to psychosocial stressors. . . no more than slight impairment in social, occupational or school functioning . . . DSM-IV at 32.

3

gets along very well with his wife. He can understand and follow basic instructions. He could maintain the attention required to perform simple repetitive and somewhat more complex tasks. There is no evidence of ADHD, adult type, at the present time. Some of this depression and irritability seems to be related to his Axis I diagnosis of major depression. His dyslexia certainly is a complicating problem. The claimant has difficulty withstanding the stress and pressures associated with day to day work activities in a stressful environment. He states that he is barely able to deal with some of the stresses in his current college courses. Any records from UNM in Gallup after this semester is over would certainly be helpful. I consider this psychiatric impairment to be moderate to marked.

(Tr. 121).

10. Plaintiff subsequently did well in school[5], and in December 2000 was invited to talk to the college personnel department about eventually working as welding instructor at the college. (Tr. 166). Nonetheless, Dr. Braiman, in a letter written one week after Plaintiff's hearing before the ALJ stated:

> (Mr. Thomas) still complain(s) of difficulty with anxiety and stress, even at school with a reduced work load. Nonetheless, he has been fairly successful at doing his

---

[5]January 20, 2000:   Dr. Braiman noted that Plaintiff was doing well in school. (Tr. 159).

March 16, 2000:   Dr. Sherrill noted that things were going remarkable well, that reading was improving and Plaintiff was learning to compensate for his slow processing. At this time Plaintiff was volunteering in a college welding program, in addition to completing his course work. (Tr. 127).

April 13, 2000:   Dr. Sherrill noted that although Plaintiff continued to struggle with his slow processing in college courses which required a great amount of reading, he had maintained reasonably well by devoting extra time for study. (Tr. 126). On the same day, Dr. Braiman noted that Plaintiff had done well in school, obtaining an A+ and an A. (Tr. 159).

September 25, 2000 &
October 23, 2000:   Dr. Sherrill stated that Plaintiff was making adequate progress in school (Tr. 169, 168).

December 15, 2000:   Dr. Sherrill noted that utilizing compensatory techniques, Plaintiff continued to succeed well in his college courses, and that he expressed no anxieties or failure or being able to keep up with the other students. (Tr. 166).

>course work despite the increased effort required.  Even though his nightmares and sleep have improved, his current mental state of anxiety, stress intolerance, and occasional depression have continued. . . . In my opinion, because of (Post traumatic stress disorder with symptoms of anxiety, stress intolerance, and some depression) it would not be possible for him, at the present time, to return to a work situation even where he had to do simple, repetitive work.  His current anxiety and depression levels would not permit him to do any work on a competitive basis.  I believe that he should receive Social Security disability which would enable him to continue his schooling and which would allow him, then, to perform a different kind of work from his old work, and also enable him to better withstand the stress and pressures associated with competitive employment.  I do not think that making him go back to work at a lower level would decrease his stress and anxiety at this time . . . It is my further treating opinion that it would be possible for him to integrate part-time work activity with his college course work within the next 6-12 months, based on his gradual improvement.

(Tr. 179).

II

Question presented

11.    Whether substantial evidence and the application of correct legal principles supports the ALJ's conclusion that Plaintiff's mental impairment had ceased to be "severe," that is, ceased to have more than in minimal effect on his ability to perform basic work activities prior to March 2000.

III

Standard of Review

12.    This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied.  **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994).  Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "  **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  In reviewing

the Commissioner's decision, the court cannot weigh the evidence or substitute its discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole.  **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

13. A mental impairment must last or be expected to last for a continuous period of not less than 12 months to qualify as disabling. §42 U.S.C. 423(d)(1)(A); **Thompson v. Sullivan**, 987 F.2d 1482, 1486 (10th Cir. 1993).  The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled.  **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988).  A disability claim may be denied at step two only if an impairment, or combination of impairments, produces no more than a minimal effect on the claimant's physical and/or mental ability to do basic work activities.  **Soc. Sec. Rul. 85-28**.  "If such a finding is not clearly established by medical evidence . . . adjudication must continue through the sequential evaluation process."  **Id., see also Williams v. Bowen**, 844 F.2d 748, 751 (10th Cir. 1988) (holding that if a claimant presents medical evidence which constitutes a mere "*de minimis*" showing of severity, the ALJ must proceed to step three).  However, the claimant "must show more than the mere presence of a condition or ailment." **Hinkle to Apfel**, 132 F.3d 1349, 1352 (10th Cir. 1997).

14. Decisions at step two are governed by the Secretary's severity regulations, §20 C.F.R. 404.1520(c), and are based on medical factors alone.  Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do *basic work activities*, i.e., "the abilities and aptitudes necessary to do most jobs." §§20 C.F.R. 404.1521(b) (1986).  Presumptively, if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors,

the impairments do not prevent the claimant from engaging in substantial gainful activity.

15.     Basic work activities are not all work activities.  In terms of mental abilities, they include understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521 (b); S.S.R. 85-28.  1985 W.L. 56856, * 3.

> A determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individuals physical and mental ability to do basic work activities.

S.S.R. 96-3p, 1996 W.L. 374181, *2.

## IV.

## The ALJ's Decision

16.     The ALJ relied on the following in evaluating the limitations and restrictions Plaintiff's mental impairment imposed on his ability to perform basic work activities:

(1)     Plaintiff's prior employment was highly stressful, involving exposure to highly dangerous, life-threatening situations relating to work-place safety.  Plaintiff has since moved to a low-key, rural setting which a treating care provider identified as an important component in easing anxiety and depression (Tr. 18-19).

(2)     Based on Dr. Sachs' evaluation, Plaintiff is able to relate to others, despite his known difficulty with supervisors in the past.  (Tr. 19).

(3)     At the time of his administrative hearing, Plaintiff was taking 10 hours of college course work in order to change to a career where personal safety would be much less of an issue.  (Tr. 19).  He has some compromise in his speed of cognitive functioning.

>   Nonetheless, he can perform college level work successfully, using compensatory techniques. (Tr. 19).
>
> (4) Plaintiff still complains of anxiety and stress involving school work. Nonetheless, he has been fairly successful in college course work despite the increased effort required of him. (Tr. 19).
>
> (5) Based on Dr. Sachs' evaluation, Plaintiff has the ability to maintain the attention required to perform simple, repetitive and somewhat more complex tasks. (Tr. 19). Dr. Braiman's stated that Plaintiff could not do simple, repetitive work, and that high levels of anxiety and depression prevented him from doing any work on a competitive basis. However this statement is contradicted by his further statement that Plaintiff could integrate part-time work activity with college course-work within the next 6-12 months, based on current gradual improvement. (Tr. 19).

The ALJ concluded that Plaintiff's mental impairments "have been successfully managed, even to the extent and degree that his alleged impairments have not significantly impacted (on his) ability to do basic work activities." (Tr. 19).

17. Plaintiff contends that the ALJ's findings can not be supported for the following reasons:

>   (1) The ALJ ignored or improperly discounted certain evidence, to wit: GAF ratings of 50 and 48 in March and May, 1999;
>
> (2) The ALJ did not address Dr. Blackburn's May 1999 evaluation listing symptoms as well as problems with mood, interpersonal relationships and judgment or Dr. Nahmias evaluation of Plaintiff's anxiety as "significant; "
>
> (3) Dr. Sachs assessed Plaintiff's psychiatric impairment as "moderate to marked," and

(4)  The ALJ disregarded Dr. Braiman's opinion that it would be 6-12 months following the administrative hearing before Plaintiff would be able to integrate part time work with college course work; and the he was currently incapable of performing even simple, repetitive work.

V.

Analysis

18.  The ALJ did not discuss any of Plaintiff's GAF ratings. However, he did state that he had reviewed all the evidence of record (Tr. 17), and found that Plaintiff's depressive symptoms and anxiety had been successfully managed. (Tr. 19). As stated in **Clifton v. Chater**, 79 F.3d 1007, 1009-1010 (10th Cir. 1996):

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. (citation omitted). Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

The evidence relating to Plaintiff's GAF scores was not uncontroverted. Although Ms. Candrian and Dr. Blackburn assigned scores of 50 and 48 in March and May 1999, Dr. Sachs assigned a current *and past year* GAF of 75 in March 2000. Accordingly, the ALJ was not required to specifically discuss the GAF ratings assigned to Plaintiff. The ALJ did not discuss the symptoms described by Drs. Nahmias and Blackburn. He did, however, discuss Plaintiff's improved condition as documented in the later records of Drs. Sherrill, Braiman and Sachs, consistent with his finding that Plaintiff's anxiety and depression had been successfully managed. The ALJ was entitled to discount Dr. Braiman's statement that Plaintiff was not capable of even simple, repetitive work, and would remain so impaired for several months. That opinion was not well supported by clinical and laboratory

diagnostic techniques and was inconsistent with other substantial evidence in the record, *to wit*, Plaintiff's documented decreased in symptoms and documented success in college classes. **Castellano v. Sec. of Health & Human Servs**, 26 F.3d at1029; §20 C.F.R. 404.1527(d) (2). Finally, rather than citing to Dr. Sacks' statement that Plaintiff's psychological impairment was moderate to marked, the ALJ relied on Dr. Sacks assessment of the basic mental work activities impacted by Plaintiff's psychological impairment. Dr. Sacks' opinion that Plaintiff had the ability to perform simple, repetitive and somewhat more complex tasks, and to relate to others is substantial evidence that Plaintiff's mental impairment is not severe.[6]

VI.

Recommendation

19. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse and Remand for rehearing be denied, and that the decision of the Commissioner of Social Security to deny Plaintiff's claim for benefits under Title II of the Social Security Act be affirmed.

_____
Richard L. Puglisi
United States Magistrate Judge

---

[6] I note that in evaluating Plaintiff's ability to withstand the stress and pressure of day to day work activities, Dr. Sacks was interested in Plaintiff's ability to withstand the stresses of his current college courses. (Tr. 121). Plaintiff subsequently excelled in his college endeavors. (See footnote 5, *supra.*).